**In re Lawrence B. BURRIS, d/b/a # 96 Cattle Company, Burris–Dolan, Burris Farms and Burris–Goldsborough.**

**Bankruptcy No. 88–71006.**

United States Bankruptcy Court, E.D. Oklahoma.

Jan. 2, 1990.

A. Camp Bonds, Jr., Muskogee, Okl., for debtor.

G. Blaine Schwabe, III, Oklahoma City, Okl., for Farm Credit Bank of Wichita.

## CORRECTION ORDER

JAMES E. RYAN, Bankruptcy Judge.

On this 2nd day of January, 1990, a Motion to Stay Pending Appeal filed by Farm Credit Bank of Wichita ("FCB") (Docket Entry No. 292) with a Response to the Motion filed by the Debtor (Docket Entry No. 306) and a Reply to the Response by FCB (Docket Entry No. 321) came before this Court for consideration.

Additionally, this Court reviewed its Order entered on October 24, 1989, 107 B.R. 342, with regard to the Debtor's Motion to Lease Property (Docket Entry # 277) and the Response to the Motion by FCB (Docket Entry # 284). Said review has resulted in a determination by this Court that the legal conclusions contained in the October 24, 1989 Order were incorrect and thus must be vacated. The proper reasoning and conclusions shall be entered in this Order to rectify the record in this case.

After review of the pleadings set forth hereinabove including this Court's Order of October 24, 1989, this Court does hereby enter the following findings and conclusions in conformity with B.R. 7052 in this core proceeding:

## STATEMENT OF ISSUE

At issue in this Correction Order is whether the Debtor may enter into an oil and gas lease on certain real property absent a subordination agreement from

FCB, considering the language in FCB's real estate mortgage.

## BACKGROUND

On October 24, 1989, this Court entered a Clarification of Order Entered August 3, 1989 resolving, among many other issues, a Motion to Lease filed by the Debtor. In that Motion, the Debtor sought an Order from this Court requiring FCB to subordinate its lien on the proceeds from the mineral estate in favor of a new lessee. In consideration of this subordination, the Debtor further requested that the Court grant to FCB a replacement lien against 100% of the bonus and royalty interests to be received under the lease until FCB has received the full value of its interest.

By virtue of the language contained in the mortgage given by the Debtor in favor of FCB (specifically set forth hereinbelow), this Court found in its prior Order that FCB encumbers the incidents of production from the mineral estate represented by "rents, royalties, bonuses and delay monies." As a result, we found that FCB implicitly through this language granted authority to the Debtor to enter into an oil and gas lease on the mineral estate without the necessity of a subordination agreement from FCB.

After subsequent research spurred by the Motion to Stay Pending Appeal filed by FCB, we have determined that this conclusion, though logical, is not supported by the law. In an effort to expedite matters with the least expense to the parties, FCB agreed to dismiss its appeal of the Clarification Order to enable this Court to correct that ruling. Said appeal was dismissed by Order of the United States District Court of the Eastern District of Oklahoma entered on December 20, 1989.

## FINDINGS OF FACT

1. Prior to 1979, the Debtor as owner of the fee estate of certain real property, entered into a mortgage with FCB. Among the provisions contained in said mortgage is found the term whereby "Mortgagor hereby transfers, assigns, sets over and conveys to Mortgagee all rents, royalties, bonuses and delay monies that may from time to time become due and payable under any oil and gas or other mineral lease of any kind now existing, or that may hereafter come into existence ..."

This provision effectively encumbers all incidents of production from the mineral estate.

2. The mortgage further states that "Mortgagor hereby covenants and agrees with Mortgagee as follows:

... (6) ... not to commit or suffer waste to be committed upon the premises; ..."

## CONCLUSIONS OF LAW

A. Under Oklahoma law, "where a mortgage provides by one clause that the mortgagor retaining possession 'shall not suffer waste,' by another clause provides 'as additional and collateral security' for assignment to the mortgagee of all royalties, revenues, and benefits under all oil, gas, or mineral leases in force or which may thereafter be placed upon the premises, and for payment of such revenues upon demand to such lessees, ... the mortgage is superior to an oil and gas or mineral lease executed after the date of the mortgage." *Breeding v. Ritterhoff*, 126 Okl. 225, 259 P. 227 (1927).

"Waste" is defined as "... whatever does lasting damage to the freehold or inheritance, and tends to the permanent loss of the owner in fee, or to destroy or lessen the value of the inheritance. Any act which tends to diminish the estate and cause a permanent loss to the owner of the fee constitutes waste." *Aldridge v. Houston Oil Company*, 116 Okl. 281, 244 P. 782 (1926). Although some Courts have determined that if a mortgage does not prohibit the mortgagor from entering into an oil and gas lease or the drilling for oil and gas, then such acts do not in fact "waste" and do not give rise to an action by the mortgagee. Rather, it is production which constitutes a "wasting" of the mineral estate and diminishes the security of the mortgagee. *Federal Land Bank v. Mulhern*, 180 La. 627, 157 So. 370 (1934). However, in Oklahoma, it would appear that the current

state of the law would prohibit even the entering into an oil and gas lease by the mortgagor absent a provision in the mortgage which reserves this right in the mortgagor. *Breeding v. Ritterhoff,* supra, 259 P. at p. 228.

In the case at bar, it is clear that the mortgage does not specifically reserve the right in the mortgagor to enter into an oil and gas lease, drill or achieve production from the mineral estate. Thus, any such production, although benefitting FCB since all incidents of production are paid directly to it, would constitute wasting and be prohibited under the mortgage and current law. As a result, a subordination agreement must be obtained from FCB prior to the Debtor entering into an oil and gas lease. Without such a subordination, the lease would be defeasible by the foreclosure of the mortgage by FCB. *Ball, et al. v. Coyle,* 108 Okl. 30, 233 P. 750 (1925).

B. Although the above clearly represents the state of the law, this Court finds that it must establish a procedure whereby all parties are afforded due process and yet the reorganization efforts of the Debtor are not thwarted.

Therefore, the following procedure shall be established for the future conduct of the Debtor and FCB with regard to oil and gas lease agreements proposed by the Debtor:

(1) If the Debtor desires to enter into an oil and gas lease with respect to property mortgaged to FCB, Debtor shall forward to FCB:

(a) a copy of the proposed lease fully executed by Debtor;

(b) a Subordination (of lien) Agreement for FCB to execute and return;

(c) a copy of a written offer to lease which identifies the intended lessee and the amount of bonus to be paid FCB upon receipt of the executed Subordination Agreement.

(2) Within ten (10) business days of receipt of the Subordination Agreement, FCB shall approve or deny such Agreement, by notifying the Debtor as follows:

(a) if such Agreement is approved, FCB shall return to the Debtor the proposed Subordination Agreement or prepare its own proposed Agreement to effect the recognized purpose. All lease bonuses, rentals, oil and/or gas proceeds representing the royalty interest and any other income or revenue derived from the lease shall be applied to Debtor's indebtedness to FCB according to the terms of the mortgage. FCB shall be the direct payee from the production purchaser after execution of a proper Division Order and account semiannually beginning six months after first payment to Debtor as to the production proceeds received.

(b) if such Agreement is denied approval, FCB shall notify Debtor that FCB refuses to subordinate its mortgage lien to such lease.

(3) If FCB refuses to subordinate its mortgage lien to a proposed oil and gas lease, or if FCB has not timely acted on a subordination request in accordance with the foregoing procedure, Debtor may seek an expedited hearing before this Court regarding approval of the proposed lease agreement. Debtor shall seek this hearing by filing a Motion to Approve Proposed Lease, setting forth the specific lease agreement at issue, the amount of any bonuses which have been offered by the proposed lessee, and a request for a hearing. FCB shall be allowed seven (7) days thereafter within which to respond to the Motion and the matter shall be set for hearing with at least five (5) days notice to FCB, the Debtor and the United States Trustee.

IT IS THEREFORE ORDERED that the portion of the Clarification Order entered October 24, 1989 relating to the Debtor's Motion to Lease, namely the fourth paragraph of the Statement of Facts and paragraph E of the Conclusions of Law as well as the ruling on this Motion, be vacated.

IT IS FURTHER ORDERED that the Motion to Lease Property filed by the Debtor is hereby denied.

IT IS FURTHER ORDERED that the Motion to Stay Pending Appeal filed by

FCB is rendered moot by the dismissal of the appeal.

IT IS FURTHER ORDERED that the parties adhere to the procedure established herein with regard to all future proposed oil and gas lease agreements.